# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott Fetterolf and Theresa E. Fetterolf  :
                                  :

              v.                       :

                                  :

Zoning Hearing Board of the           :
Borough of Sewickley Heights         :

                                  :

              v.                       :

                                  :

Borough of Sewickley Heights       :

                                  :

Appeal of: Borough of Sewickley      :    No. 599 C.D. 2020
Heights                         :

                                  :

Scott Fetterolf and Theresa E. Fetterolf,  :
            Appellants                :

                                  :

              v.                       :

                                  :

Zoning Hearing Board of the           :
Borough of Sewickley Heights         :

                                  :

              v.                       :

                         :    No. 666 C.D. 2020
Borough of Sewickley Heights       :    Submitted: February 9, 2021


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                FILED: March 1, 2021

          Scott Fetterolf and Theresa E. Fetterolf (Theresa Fetterolf) (collectively, Owners), and the Borough of Sewickley Heights (the Borough) cross-appeal from the Allegheny County Common Pleas Court's (trial court) May 26, 2020

order affirming in part and reversing in part the Borough's Notice of Violation/Cease and Desist Order (NOV), for violating various sections of the Borough's Zoning Ordinance (Ordinance).[1]

Owners currently reside at 528 Scaife Road, Sewickley, Pennsylvania (Subject Property), which is located in the Borough's A-Historical-Rural Residential (A-H-RR) Zoning District.[2] *See* Reproduced Record (R.R.) at 2364a-2365a. On the Subject Property, Owners engage in an "Agricultural Operation[,]" which is a permitted use in the Borough's A-H-RR Zoning District. *See* Ordinance Table 1, Original Record (O.R.) at 37-38.[3] Following Owners' appeal, on May 26, 2020, the trial court reversed the portions of the NOV imposed for holding events on the Subject Property from August 2017 to December 2017, and events not related to the Agricultural Operation on the Subject Property. The trial court affirmed the Zoning Hearing Board of the Borough of Sewickley Heights' (ZHB) decision that Owners used the Subject Property as a "School, Special or Studio"[4] without obtaining conditional use approval. In the instant appeal before this Court, the Borough[5] appeals from the portion of the trial court's order reversing the ZHB's determination that the events held on the Subject Property were not related to the Agricultural Operation on the Subject Property. Owners appeal from the portion of the trial court's decision affirming the ZHB's determination that Owners used the Subject Property as a "School, Special or Studio" without obtaining conditional use

---

[1] Borough of Sewickley Heights, Pa., Ordinance No. 294, Section 2.02 (November 4, 1935).

[2] Ordinance §§ 4.01, 5.01-5.05.

[3] Because the Original Record does not contain page numbers, this Court will reference the page numbers chronologically.

[4] Ordinance § 2.02, O.R. at 204 (ZHB Record at 72).

[5] On September 9, 2020, the ZHB filed a brief with this Court, wherein it joined and supported the Borough's Brief of Designated Appellant. *See* ZHB Br., 09/09/2020. Therefore, the Borough's arguments also represent the ZHB's position in this case.

approval.[6]   After full consideration and review,[7] this Court reverses in part and affirms in part.

_____

[6] Owners argue that their right to host the types of events and demonstrations cited in the NOV is protected by the act commonly referred to as the Right to Farm Act (RTFA), Act of June 10, 1982, P.L. 454, *as amended*, 3 P.S. §§ 951-958.  The trial court did not address this issue, but the ZHB made findings of fact and conclusions of law related thereto.  *See* ZHB Dec., 04/29/2019, Conclusions of Law (COL) 53-62, R.R. at 2411a-2413a, COL 97-107, R.R. at 2417a-2419a.  While the trial court reversed the ZHB's decision finding Owners in violation of the Ordinance by operating an event space that is not accessory to the Subject Property's Agricultural Operation, it did so without considering the potential protections afforded to Owners under the RTFA.  In the instant appeal before this Court, Owners argue that the RTFA not only makes their event space accessory to their Agricultural Operation, but makes their demonstrations permissible without the need to obtain a conditional use permit.

In its decision, the ZHB identified one event cited in the NOV, Shepherding Mentor, as a protected activity under the RTFA.  The ZHB explained its narrow determination, stating:

> [The ZHB] finds that the Shepherding Mentor program is protected by the [RTFA].  In particular, the [ZHB] finds that the program assists [Owners] in their normal farming operations because it necessarily requires the working of the [Subject Property] as a farm as an example to prospective farmers.  Further, the education of prospective farmers is a practice adopted by farmers to ensure the future of production and preparation for market of poultry, livestock and other agricultural commodities.

COL 105, R.R. at 2419a.  Therefore, the ZHB conducted an analysis regarding the RTFA issue and precluded the Borough from citing Owners for the Shepherding Mentor event.  It is unclear whether the trial court affirmed this narrow decision in affirming the ZHB's upholding of the NOV for Owners' failure to obtain a conditional use permit in violation of the Ordinance.  The ZHB also concluded that the RTFA does not allow Owners to operate an event space or venue that is not accessory to the Agricultural Operation on the Subject Property.

On appeal to this Court, Owners again raise protection under the RTFA as a defense to all citations within the NOV.  As the trial court did not address this issue, this Court must look exclusively to the ZHB's findings and conclusions regarding this issue.  Therefore, this Court analyzes the validity of the NOV under the assumption that the Shepherding Mentor event was validly protected by the RTFA and, therefore, should not have been cited within the NOV.  However, we accept the ZHB's conclusion that the Borough was able to cite Owners for the remainder of the events and demonstrations within the NOV, but only as they relate to the RTFA.

[7] Where a trial court accepts no additional evidence, "our review is limited to considering whether the zoning hearing board erred as a matter of law or abused its discretion."  *S. of S. St. Neighborhood Ass'n v. Phila. Zoning Bd. of Adjustment*, 54 A.3d 115, 119 n.1 (Pa. Cmwlth. 2012), *disapproved of on other grounds* by *Scott v. City of Phila., Zoning Bd. of Adjustment*, 126 A.3d 938 (Pa. 2015).

## I.    Background

Owners have owned the Subject Property, which consists of a 27-acre parcel of land with a single-family dwelling and multiple agricultural structures, including a barn, brooder, hen house, garage, and dairy house, since 2003.  *See* R.R. at 1652a.  The Subject Property, commonly known as Dundee Farm, is primarily used as an Agricultural Operation, where Owners grow flowers and vegetables, raise bees, chickens, and sheep, and produce honey, eggs, and wool.  *See id*. at 2365a.  Agricultural Operations are a permitted use within an A-H-RR Zoning District, and the Subject Property is recognized as a United States Department of Agriculture Commercial Farm.  *See* Ordinance Table 1, O.R. at 3258-3261; *see also* R.R. at 2365a.

On June 29, 2017, the Borough's Zoning Officer, Katie Stringent (Zoning Officer Stringent), mailed a letter to all Borough residents entitled "Ordinance Compliance."  The June 29, 2017 letter provided, in pertinent part:

> First, events with a commercial purpose generally are not permitted in any of the primarily residential zoning districts - including the A, C, and E districts.  Second, hosting public events in any of these zoning districts, even when noncommercial in character, must not exceed a number typically associated with a residential use.
>
> While commercial events are prohibited and will regrettably invite enforcement action, the Borough recognizes and lauds the philanthropic nature of many of its residents.  Accordingly, for those residents who wish to host a few charitable fundraising events each year, please note the following general guidance:

---

When the trial court accepts additional evidence upon review of a zoning board decision, the appellate court "must determine whether the trial court abused its discretion or committed an error of law."  *Sowick v. Zoning Hearing Bd. of Brown Twp.*, 214 A.3d 775, 783 n.6 (Pa. Cmwlth. 2019).

4

[-]Up to four (4) charitable events each calendar year remains consistent with a residential use.

O.R. at 1078 (ZHB Record (ZHB R.) at 948). On July 6, 2017, Zoning Officer Stringent, on authority of Borough Council, sent a second letter only to Owners reiterating the "General Rule Regarding Charitable Events" contained in the June 29, 2017 letter, and directing Owners to "review these rules to ensure compliance." *Id.* at 2634a, O.R. at 596 (ZHB R. at 464). The July 6, 2017 letter also invited Owners to schedule an appointment with the Borough if they had questions. *See id.*

Owners scheduled a meeting for August 7, 2017, at which Borough Council President Phil Hundley (Hundley), Mayor John Oliver, Borough consultant Richard Hadley, and Zoning Officer Stringent met with Owners and their legal counsel. *See* R.R. at 2873a-2874a. At the meeting, Hundley gave Owners permission to hold a farm-to-table reception and five charitable events that had already been planned for the season. *See id.* Owners did not schedule any additional events after the meeting on August 7, 2017. *See id.* at 2873a.

Thereafter, the Borough discovered that Owners had been renting the Subject Property to be used as an event space and venue for public and private events, such as weddings, public fundraisers, and business kick-starters, and for classes, such as canning classes, jelly, soap, and cheese making classes, and needle felt workshops, without first obtaining conditional use approval in violation of the Ordinance. *See id.* at 2364a-2367a. On October 5, 2017, the Borough authorized Zoning Officer Stringent to issue the NOV to Owners for the following Ordinance violations: (1) use of the Subject Property and buildings/structures located thereon as a "Place of Worship/Assembly;"[8] (2) use of the Subject Property as a "commercial venue/event space," which the Borough asserted is not permitted in the A-H-RR

_____

[8] Both the ZHB and the trial court determined that issuing an NOV to Owners on the basis of "Place of Worship/Assembly" was inappropriate. *See* ZHB Dec., 04/29/2019, at III.1.b, R.R. at 2435a. Further, this issue is not presently before this Court on either appeal or cross-appeal.

5

Zoning District; and (3) use of the Subject Property as a "[School,] Special or Studio []," which the Borough declared is permitted only as a conditional use within the A-H-RR Zoning District. *Id*. at 3012a. The Borough issued the NOV based on Owners' aggregate use of the Subject Property as an event space available for the public to rent beginning in 2015, and not on the basis of any specific events. *See id*. at 2382a, 2408a.

Owners appealed from the NOV to the ZHB on November 1, 2017. *See id*. at 2367a, 3014a. The ZHB held 10 public hearings over the course of a year, with appropriate advertising and notice provided for each.[9] *See id*. at 2367a-2368a. Borough officials, neighbors, renters of the Subject Property, Owners, and experts on land use and zoning provided testimony before the ZHB. *See id*. at 2405a, 2407a-2408a, 2410a-2411a. The ZHB unanimously upheld the NOV, concluding, in relevant part, that the use of the Subject Property as an event space is not accessory to the Subject Property's principal use as an Agricultural Operation. *See id*. Specifically, the ZHB concluded that Owners' use of the Subject Property for events goes beyond what is consistent, customary, and incidental (accessory) to the Subject Property's principal use as an Agricultural Operation, because:

> • Owners are renting the Subject Property to groups and individuals for the sole use of the Subject Property as an event space for others;
>
> • Owners require execution of rental contracts and waivers of liability, payment of rental fees, acknowledgment of the Subject Property's "Rules of Conduct," and the purchase of event insurance;
>
> • The guests attending the events are on the Subject Property for the event, not for the purchase of agricultural commodities or activities related to farming;

---

[9] The hearings were held on: January 23, February 21, March 14, April 10, July 17, August 7, October 16, November 8, and December 5, 2018; and January 29, 2019. *See* R.R. at 2367a-2368a.

6

• Cessation of the Subject Property's principal use as an Agricultural Operation would have no impact on the use of the Subject Property for events because little to no products or services from the Agricultural Operation are used or sold during the events; and

• The record contains no evidence that the events were planned and hosted by Owners or that the events featured agricultural products grown and/or produced on the Subject Property, but rather the evidence demonstrates Owners did not participate in the planning of, or even attend, all of the events, and only minimal amounts (and often none at all) of crops, livestock, or livestock products produced, harvested, and/or prepared on the Subject Property were used or sold during the events.

*See id*. at 2405a-2407a, 2410a.

Owners appealed from the ZHB's decision to the trial court, raising 79 issues on appeal. *See id*. at 2436a-2459a. The trial court opened the record to accept additional evidence on one discrete, single issue - whether the Borough was equitably estopped from citing Owners for events that occurred during a four-month period between August 2017 and December 2017, because Owners reasonably relied upon Hundley's representations made during the August 7, 2017 pre-enforcement meeting with respect to these events. *See id*. at 2549a-2551a. The trial court received no additional testimony or evidence on the remainder of the issues in the case. *See id*.

On May 26, 2020, following briefing and oral argument, the trial court, applying a *de novo* standard of review to all of the issues, affirmed in part, and reversed in part the ZHB's decision. *See* Trial Ct. Op. First, the trial court held that the Borough was equitably estopped from citing Owners for events that occurred between August 2017 and December 2017. *See id*. at 3. Next, reversing the decision of the ZHB in part, the trial court held that the continued use of the Subject Property for events is accessory to the Subject Property's principal use as an Agricultural

7

Operation because such events "have a direct connection and are wholly reliant on the agricultural production on the [Subject] Property" and "use crops and goods produced from the agricultural products on the [Subject] Property . . . ." *Id.* at 4. Finally, the trial court, affirming the ZHB's decision in part, held that the classes on the use of products produced at the Subject Property fell within the "School, Special or Studio" category of the Ordinance and, thus, required a conditional use approval. *Id.* at 5.

On June 24, 2020, the Borough filed an appeal with this Court challenging the trial court's order. *See* R.R. at 2868a-2886a. On June 25, 2020, Owners filed a Notice of Cross-Appeal with this Court. *See* R.R. at 2887a-2904a.

## II. Discussion

### A. Trial Court Review

A trial court is warranted in taking additional testimony at a *de novo* hearing on a municipal zoning board appeal only when the party making the request demonstrates that the record is incomplete because it was denied an opportunity to be fully heard or that the board excluded relevant testimony. *See Reformed Seventh Day Adventist Church, Inc. v. Phila. Zoning Bd. of Adjustment*, 561 A.2d 1324 (Pa. Cmwlth. 1989). If the trial court opens the record completely to receive evidence on the merits, the standard of review is *de novo. See Coal Gas Recovery, L.P. v. Franklin Twp. Zoning Hearing Bd.*, 944 A.2d 832 (Pa. Cmwlth. 2008). However, when a trial court takes additional evidence, either itself or via remand to the zoning hearing board, on a single discrete issue, only that single issue is subject to *de novo* review. *See Sowich v. Zoning Hearing Bd. of Brown Twp.*, 214 A.3d 775 (Pa. Cmwlth. 2019); *see also Cherry Valley Assocs. v. Stroud Twp. Bd. of Supervisors*, 554 A.2d 149 (Pa. Cmwlth. 1989). Further, under Section 1005-A of the

8

Pennsylvania Municipalities Planning Code (MPC),[10] the trial court is required to make findings of fact on the single issue for which it took additional evidence.

Here, the Borough avers that the trial court applied the *de novo* standard of review to *all* of the issues on appeal, not just those issues related to the August 7, 2017 pre-enforcement meeting. The trial court requested additional evidence on a single, discrete issue - namely, "the representations made at the August 7, 2017 [pre-enforcement] meeting" between Owners and the Borough officials. R.R. at 2551a. The trial court also specifically denied "[t]he request to take additional testimony concerning agricultural uses . . . ." *Id*. at 2551a. However, in its opinion, the trial court concluded that "[w]hen the trial court takes [any] additional evidence on the merits, it must determine the case *de novo*, making its own findings of fact based on the record made before the [ZHB,] as supplemented by the additional evidence." Trial Ct. Op. at 2. Therefore, it appears that the trial court did not defer to the ZHB's findings of fact for issues outside of the effect of the August 7, 2017 pre-enforcement meeting.

To the extent the trial court reviewed the remainder of the issues on appeal - whether the events and activities held on the Subject Property were accessory to the Agricultural Operation - it should have done so with deference given to the ZHB's findings of facts and credibility determinations. *See Cherry Valley Assocs*. Although the trial court did not defer to the ZHB's findings and conclusions, "the undisputed facts in the record and the trial court's opinion provide a sufficient basis for our appellate review." *Mitchell v. Zoning Hearing Bd. of the Borough of Mount Penn*, 838 A.2d 819, 826 (Pa. Cmwlth. 2003). Accordingly, this Court will analyze the remaining issues outlined in the cross-appeals to determine whether the

_____

[10] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 101 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11005-A.

9

ZHB committed an error of law or abused its discretion.[11] *See Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637 (Pa. 1983).

## B. Use Accessory to Agricultural Operation

The Borough appeals to this Court asserting that the trial court abused its discretion and erred by determining that Owners' use of the Subject Property as an event space was accessory to the Subject Property's principal use as an Agricultural Operation. In its opinion, the trial court held that Owners' use of the Subject Property as an event space was "secondary to the [Subject Property's] principal use" because the events "were agriculturally related to the agricultural activity on the farm[,]" "have a direct connection and are wholly reliant on the agricultural production on the [Subject] Property[,]" and "use crops and goods produced from the agricultural products on the [Subject] Property . . . ." Trial Ct. Op. at 4-5. The Borough argues that this holding is in direct conflict with Pennsylvania case law and the record evidence, including Owners' testimony before the ZHB.

Section 2.02 of the Ordinance defines "Accessory Use" as "[a] use on the same lot with, and of a nature customarily incidental and subordinate to, the principal use or principal structure." Ordinance § 2.02, O.R. at 184 (ZHB R. at 52). In contrast, a "Principal Use" is defined by the Ordinance as "[t]he primary or predominant use of any lot or structure, as distinguished from a subordinate or an accessory use." Ordinance § 2.02, O.R. at 201 (ZHB R. at 69). Both the Borough

---

[11] In its brief to this Court, the Borough highlights that it chose not to appeal from the trial court's holding that the Borough was equitably estopped from citing Owners for events that took place from August 2017 through December 2017, because, as determined by the trial court, Owners "justifiably relied on the Borough's representations that they could finish the season." Trial Ct. Op. at 5. Therefore, this Court need not review that issue. However, it is notable that the issue not presently before this Court was the only issue to necessitate additional evidence and *de novo* review before the trial court.

10

and Owners aver that the principal use of the Subject Property is an Agricultural Operation.

Owners bear the burden of proving that the use of the Subject Property for events is accessory to the Subject Property's principal use as an Agricultural Operation. *See Smith v. Zoning Hearing Bd. of Conewago Twp.*, 713 A.2d 1210 (Pa. Cmwlth. 1998). Owners must demonstrate that the use of the Subject Property for events meets the definition of an accessory use under the Ordinance. *Id.* Further, to qualify as an accessory use to the Subject Property's Agricultural Operation, the use must be customary and incidental to the Agricultural Operation. *Id.*

When interpreting zoning ordinances, this Court relies on common usage of words and phrases and construes language in a sensible manner. *See Steeley v. Richland Twp.*, 875 A.2d 409, 414 (Pa. Cmwlth. 2005). This Court has previously interpreted "subordinate" in accordance with its dictionary definition, meaning "placed in or occupying a lower class, rank, or position: INFERIOR." *City of Hope v. Sadsbury Twp. Zoning Hearing Bd.*, 890 A.2d 1137, 1145 (Pa. Cmwlth. 2006) (italics omitted) (quoting Merriam-Webster's Collegiate Dictionary 1244 (11th ed. 2003)); *see also C.O. Revocable Family Tr. v. City of Pittsburgh Zoning Bd. of Adjustment* (Pa. Cmwlth. No. 765 C.D. 2014, filed March 13, 2015)[12] (holding that an outdoor tent and catering event business was not a permissible accessory use to a bed and breakfast but, rather, constituted the primary use of the property where the revenue derived therefrom, the number of staff required to operate, and the total number of guests that attended the catering events was not subordinate to but exceeded that of the bed and breakfast); *Eby v. E. Earl Twp. Zoning Hearing Bd.* (Pa. Cmwlth. No. 1618 C.D. 2007, filed July 16, 2008) (concluding a livestock feed

---

[12] This case and the other unreported opinions cited herein are cited for their persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures. *See* 210 Pa. Code § 69.414(a).

11

mix business was not accessory to a farm because the ingredients used in the feed mix operation were not produced on but delivered to the property, and the owner and his family devoted the majority of their time to the business).

"The basis for the judicial deference [to the findings of the ZHB] is the knowledge and expertise that [the ZHB] possesses to interpret the ordinance that it is charged with administering." *Smith v. Zoning Hearing Bd. of Huntingdon Borough*, 734 A.2d 55, 57-58 (Pa. Cmwlth. 1999). "The ZHB is the sole judge of the credibility of witnesses and the weight afforded their testimony." *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 518 (Pa. Cmwlth. 2014). Therefore, "this Court will not engage in fact finding or disturb the [ZHB's] credibility determinations on appeal." *Manayunk Neighborhood Council v. Zoning Bd. of Adjustment of the City of Phila.*, 815 A.2d 652, 658 (Pa. Cmwlth. 2002).

Here, the ZHB made numerous findings of fact to support its determination that the use of the Subject Property as an event space is not an accessory use to the Agricultural Operation. *See* R.R. at 2364a-2435a. The Borough argues that, in particular, the ZHB's findings include testimony and evidence from Owners and renters of the Subject Property indicating that the events cited in the NOV are not connected to or wholly reliant on the Subject Property's principal use as an Agricultural Operation. *See* R.R. at 607a-610a, 612a, 615a-616a, 619a-620a, 625a, 669a-670a, 1241a, 2384a-2387a, 2392a-2393a. Further, the Borough points to this testimony as evidence that the events used almost no crops or agricultural goods that are produced on the Subject Property. *See id.*

In particular, the NOV cited Owners for operating the Subject Property as a "commercial venue/event space," for renting the Subject Property to host several weddings. ZHB Dec., 04/29/2019, Finding of Fact (FOF) 15, R.R. at 2367a. While Owners assert that this use is "accessory" to the existing Agricultural Operation on the Subject Property, the testimony of the renters contradicts this assertion. For

12

example, Jennifer Fossee (Fossee) hosted her wedding ceremony and reception on the Subject Property on October 10, 2015. *See* R.R. at 2385a. Fossee testified before the ZHB regarding the details of her wedding, which the ZHB summarized as follows:

> 95. [] Fossee testified that she and Mr. Richardson [groom] signed a contract, paid a rental fee, and obtained liability insurance related to the use of the [Subject] Property for their wedding.
>
> 96. [] Fossee testified that all the hor[s] d'oeu[]v[r]es and dinner served at her reception were made by third[]parties. None of the food or its ingredients were produced or prepared on the [Subject] Property.
>
> 97. [] Fossee testified that she used [only] honey from the [Subject] Property [to provide to guests] as a wedding favor.
>
> . . . .
>
> 100. [] Fossee testified that alcohol was served at her reception and that she hired a DJ to play music.

ZHB Dec., 04/29/2019, R.R. at 2385a (record citations omitted). The ZHB found Fossee's testimony credible. *See id.*, FOF 101. In addition to Fossee's testimony, other brides provided corroborating information about their own events, with others testifying that Owners provided no goods or products for use at their receptions. *See id.*, R.R. at 2385a-2386a.

Theresa Fetterolf provided similar testimony as to Owners' involvement in several private, corporate, nonprofit events, Theresa Fetterolf characterized as farm-to-table events, hosted on the Subject Property. *See* ZHB Dec., 04/29/2019, FOF 168, R.R. at 2393a. Theresa Fetterolf explained that "[s]he does not cook or serve food at the events nor is the food served at the events produced

13

on the [Subject] Property and that outside caterers are utilized." *Id.* Further, Theresa Fetterolf could not say for certain, nor could she produce any documentation proving what types or whether any agricultural products produced on the Subject Property were used during the events cited in the NOV. *See id.*

In its opinion, the trial court does not reference the multiple weddings hosted at the Subject Property, instead focusing exclusively on the farm-to-table events Owners described. *See* Trial Ct. Op. at 4. Moreover, the trial court does not include references to the ZHB's findings of fact or the ZHB's record in its entirety. The trial court states:

> The farm-to-table events cited in the NOV have a direct connection and are wholly reliant on the agricultural production on the [Subject] Property. The events use crops and goods produced from the agricultural products on the [Subject] Property and therefore are secondary to the principal use. [Owners] may not be cited for those events.

*Id.* This conclusion is unsupported by the record evidence and is in direct contradiction to the ZHB's findings. Both Owners and event hosts testified before the ZHB that these events did *not* feature agricultural goods produced on the Subject Property.

While the Ordinance allows for the existence of an "accessory use" to the Agricultural Operation on the Subject Property, an accessory use must be "secondary" and "customarily incidental" to a property's principal use. Trial Ct. Op. at 4. A farm-to-table concept may be accessory to a working farm if the products presented as farm-to-table were produced at the farm in question. Here, the ZHB found that the various private, corporate, and nonprofit events Owners described as farm-to-table did not feature food or agricultural products produced at the Subject Property. Similarly, with the exception of Fossee's testimony regarding her use of honey from the Subject Property as favors at her wedding, the weddings held at the

14

Subject Property did not feature its food or agricultural products. Rather, the testimony provided before the ZHB described a contractual obligation between the parties who rented the Subject Property and Owners indicative of that between the general public and a generic commercial venue or event space.

A reviewing court must uphold the ZHB's determination as long as the ZHB did not abuse its discretion or commit an error of law. *See Berman v. Manchester Twp. Zoning Hearing Bd.*, 540 A.2d 8 (Pa. Cmwlth. 1988). A ZHB abuses its discretion when its findings of fact are not supported by substantial evidence. *See MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hearing Bd.*, 102 A.3d 549 (Pa. Cmwlth. 2014). In the instant matter, the trial court erred in failing to afford deference to the ZHB's findings of fact.

In reversing the ZHB's determination that the events contemplated within the NOV were not accessory to the Subject Property's Agricultural Operation, the trial court not only disregarded the ZHB's factual findings, but failed to provide evidence to support its decision. The ZHB provided ample evidence to support its determination that the NOV was appropriately issued to Owners for operating a commercial venue or event space on the Subject Property in violation of the Ordinance. Therefore, this Court reverses the trial court's decision in relevant part.

### C. "School, Special or Studio" Requiring Conditional Use Approval

On cross-appeal, Owners assert that the trial court's affirmance of the ZHB's determination that Owners violated the Ordinance by holding demonstrations and classes without a conditional use permit has no basis in fact or in law. Additionally, Owners contend that the trial court and the ZHB misapplied the Ordinance's "School, Special or Studio" category to the demonstrations conducted at the Subject Property. *See* Ordinance § 2.02, O.R. at 204 (ZHB R. at 72); O.R. at 33.

Section 2.02 of the Ordinance defines "School, Special or Studio" as:

> A small scale facility, typically accommodating one group of students at a time, in no more than one instructional space offering specialized instruction, including for purposes of example but not limitation, individual and group instruction in the arts, production rehearsals, musical recitals, martial arts training, and yoga and aerobics instruction.

Ordinance § 2.02, O.R. at 204 (ZHB R. at 72). In an A-H-RR Zoning District, a "School, Special or Studio" is allowed through the grant of a conditional use permit. Ordinance Table 2, O.R. at 3262. As the Subject Property is located in an A-H-RR Zoning District and Owners did not obtain a conditional use permit from the Borough, Owners were cited in the NOV for hosting unauthorized demonstrations and classes. *See id*.

The NOV cited Owners for hosting 13 events on the Subject Property in violation of Sections 4.04, 5.03, and Table 2 of the Ordinance, which events were entitled: Jelly Making - Pepper Jelly; Wooly Ornaments and Needle Felting Workshop; Christmas Tea and Lemon Curd Making; Lavender and Rose Gifts - Soap, Sachets, and Salts; Fermentation Workshop - Sauerkraut and Kimchee; Soap Making; Cheese Making; Salsa for your Garden Party; Dye Classes; Shepherding Mentor; Summer Camps; and Bible Study. *See* O.R. at 33. Owners argue that the ZHB and, subsequently, the trial court, erred in affirming the NOV as it applied to 11 of the 13 listed events because the Borough failed to establish that 9 of the events took place.

The ZHB concluded that "the record contains sufficient evidence to show that only the cheese making class, dye class, and Shepherding Mentor class have been held on the [Subject] Property." ZHB Dec., 4/29/2019, Conclusion of Law (COL) 91, R.R. at 2416a. Citing the ZHB's July 17, 2018 hearing transcript,

16

the ZHB also concluded that Owners "held [the Subject] Property out to the public for the purpose of conducting the classes listed in the [NOV]." *Id.* Theresa Fetterolf testified before the ZHB as follows:

> [Counsel]: This is a screenshot from an Instagram account for dundeefarmgirl, which you just testified is your account; correct?
>
> [Theresa Fetterolf]: Okay.
>
> [Counsel]: Do you recognize this photograph?
>
> [Theresa Fetterolf]: I have seen it.
>
> [Counsel]: Did you upload this photograph to your Instagram account?
>
> [Theresa Fetterolf]: No, I did not.
>
> [Counsel]: The photograph shows various classes that are being held on [the Subject P]roperty and various dates and the costs of those classes. . . .

R.R. at 897a. The testimony continued to discuss the "various classes" listed in the "photograph" including "jam making," "dye class," "cucumbers," and "cheese making," and Theresa Fetterolf confirmed that those events occurred, categorizing them as "marketing events" for the farm. *See id.* at 897a-901a. Theresa Fetterolf could not confirm the existence of workshops related to "wooly ornaments," "Christmas tea and lemon curd making," "soap making," and "salsa making," despite the events being listed on the schedule advertised in the Instagram post. *See id.* at 901a-902a. Theresa Fetterolf further explained that participants do not usually have to pre-register, and their costs are for the farm products used. *See id.* at 897a, 903a.

Further, on July 17, 2018, Zoning Officer Stringent testified before the ZHB, regarding the status of any requests by Owners for permits to hold public events on the Subject Property. The exchange occurred as follows:

> [Counsel]: . . . Have [Owners] ever applied to the Borough for an occupancy permit to authorize a transition of the use of their barn from agricultural to a place of occupancy for the public?
>
> [Zoning Officer Stringent]: No.
>
> [Counsel]: Has a representative of [the Subject Property] ever applied to the Borough for an occupancy permit to authorize a transition of the use of the barn from agricultural to a place of occupancy open to the public?
>
> [Zoning Officer Stringent]: No.
>
> [Counsel]: Has the Borough ever issued an occupancy permit to [Owners] for [the Subject Property] for use of the barn on the [S]ubject [P]roperty as a place of occupancy open to the public?
>
> [Zoning Officer Stringent]: No.

R.R. at 844a. Therefore, while Owners had advertised events at the Subject Property via Instagram, they had not applied for a conditional use permit as the Ordinance required.

Owners assert that the "marketing events" held on the Subject Property should not be subject to the Ordinance's requirements because they were valid retail accessory uses. The Ordinance permits "Retail Accessory" uses, *see* Ordinance Table 2, O.R. at 3262, defined as:

> The retail sale of various products or personal services that [are] incidental and subordinate to a principal use conducted on the same premises, located in an accessory structure or in a portion of the principal structure, including for purposes of example but not limitation, a gift

18

or artisan shop within a cultural center/museum, a barber or beauty shop within a life care facility/senior living center, a tack shop associated with a commercial stable, a produce or **craft shop** associated with an agricultural operation, or a pet care products shop located within an animal grooming facility or a kennel.

Ordinance § 2.02, R.R. at 2416a-2417a (emphasis added). Owners specifically contend that the "marketing events" on the Subject Property constitute the operation of a "craft shop," which is accessory to their Agricultural Operation.

The ZHB found that while a "craft shop" may be permitted as an accessory use, the events Owners hosted do not constitute the typical business conducted at such an establishment. In making this distinction, the ZHB explained that, while "[t]he term 'craft shop' is not defined in the Ordinance, [] the Cambridge Dictionary defines 'craft shop' as 'a shop that sells decorative objects made by hand or the materials and tools used for making such objects[.]'" COL 94, R.R. at 2417a (citation omitted). In contrast, "[the] events [on the Subject Property] entail specialized instruction to a small group of participants and exceed the mere retail sale of agricultural commodities or objects made by hand. Therefore, these classes do not fall under the accessory use category of 'Retail, Accessory,' rather 'School[,] Special or Studio.'" COL 96, R.R. at 2417a.

The trial court affirmed the ZHB's decision upholding the NOV for operation of a "School, Special or Studio" without a conditional use permit. While the trial court does not cite the ZHB's findings of fact or issue its own, its opinion states:

> The evidence establishe[s] that the events exceeded the mere retail sale of agricultural commodities or objects made by hand and therefore do[es] not fall under the accessory use category of 'Retail Accessory' but rather under 'School[,] Special or Studio.' Therefore, [Owners] may be cited for these events. [Owners] may not use the buildings on the [Subject] Property as a 'School, Special

19

> or Studio' use without first obtaining conditional use approval. [Owners] offered no evidence proving that they received conditional use approval to use the [Subject] Property in this way.

Trial Ct. Op. at 5.

The "[ZHB] is entitled to considerable deference in interpreting its zoning ordinance." *Caln Nether Co., L.P. v. Bd. of Supervisors of Thornbury Twp.*, 840 A.2d 484, 491 (Pa. Cmwlth. 2004). In the instant case, the ZHB determined that activities of the type Owners planned on the Subject Property did not constitute a "craft shop" qualified as a "Retail Accessory" use as outlined in Section 2.02 of the Ordinance. While it is unclear whether the trial court afforded the appropriate deference to the ZHB's findings, it nonetheless affirmed the ZHB's decision insofar as it determined that the "marketing events" and demonstrations conducted on the Subject Property violated the conditional use requirement for such activities under the Ordinance. Therefore, based on this Court's review of the record, the ZHB did not err as a matter of law or abuse its discretion in affirming the NOV that Owners conducted a "School, Special or Studio" on the Subject Property without a conditional use permit. On this basis, this Court affirms the trial court's decision in relevant part.

## III. Conclusion

For the foregoing reasons, this Court affirms the portion of the trial court's order affirming the ZHB's determination upholding the Borough's issuance of the NOV to Owners for conducting demonstrations on the Subject Property without a conditional use permit. This Court reverses the portion of the trial court's order that reversed the ZHB's decision upholding the Borough's issuance of the

NOV to Owners for hosting events that were not accessory to the Agricultural Operation on the Subject Property.


_____
ANNE E. COVEY, Judge

Judge Crompton did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott Fetterolf and Theresa E. Fetterolf :
:
v. :
:
Zoning Hearing Board of the :
Borough of Sewickley Heights :
:
v. :
:
Borough of Sewickley Heights :
:
Appeal of: Borough of Sewickley : No. 599 C.D. 2020
Heights :
:
Scott Fetterolf and Theresa E. Fetterolf, :
Appellants :
:
v. :
:
Zoning Hearing Board of the :
Borough of Sewickley Heights :
:
v. :
: No. 666 C.D. 2020
Borough of Sewickley Heights :

# O R D E R

AND NOW, this 1st day of March, 2021, the portion of the Allegheny County Common Pleas Court's (trial court) May 26, 2020 order affirming the Zoning Hearing Board of the Borough of Sewickley Heights' (ZHB) decision upholding the Borough of Sewickley Heights' (Borough) issuance of the Notice of

Violation/Cease and Desist Order (NOV) to Scott and Theresa E. Fetterolf (Owners) for conducting demonstrations at 528 Scaife Road, Sewickley, Pennsylvania (Subject Property) without a conditional use permit is **AFFIRMED**. The portion of the trial court's order reversing the ZHB's decision upholding the Borough's issuance of the NOV to Owners for hosting events on the Subject Property that were not accessory to its Agricultural Operation is **REVERSED**.

_____
ANNE E. COVEY, Judge